Judge Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

BRANDON RONALD COLLADO,

Defendant.

NO. CR23-5000-01 BHS

UNITED STATES SENTENCING
MEMORANDUM

Brandon Collado appears before this Court for sentencing in the above-captioned case pursuant to his guilty plea on June 7, 2023, to Attempted Burglary of a Federally Insured Credit Union in violation of Title 18, United States Code, Sections 2113 and 2. The United States respectfully recommends the Court impose a custodial sentence of 33 months followed by a three-year term of supervised release, order restitution (joint and several) in the amount of $198,018.85, and order payment of the mandatory fee of $100.00. The recommended 33-month sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

United States' Sentencing Memorandum - 1
*United States v. Collado*, CR23-5000-01 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# I.      BACKGROUND

**A.      Offense Conduct**

On October 24, 2022, at 5:54AM, Tumwater Fire Department (TFD) personnel responded to a fire alarm activation at an O Bee Credit Union branch in Tumwater, Washington. The first firefighters to arrive saw flames between one and two feet tall coming from the top of the ATM, which was embedded in an exterior wall of the credit union. Firefighters suppressed the flames with fire extinguishers and hose lines. Firefighters also entered the building and found smoke in the interior of the credit union. Firefighters noticed additional damage to the building and requested Tumwater Police Department (TPD) officers respond to investigate a possible break-in attempt.

Responding TPD officers observed both fire damage (char marks) and other damage (flame-based cuts and pry marks) to the ATM, the bank deposit box (also embedded in the exterior wall of the credit union), the drive-thru teller window, and an exterior door. The damage to the ATM and night deposit box was consistent with an attempt to access the cash (and checks) inside each; the damage to the teller window and exterior door was consistent with an attempt to get inside the credit union.

Investigators obtained the surveillance footage from several exterior cameras at the credit union. On the footage, they could see that at approximately 12:46AM on October 24, 2022, a Subaru station wagon pulled into the credit union and parked well away from the building in the northeast corner of the parking lot. Then, between 12:57AM and 5:11AM, Brandon Collado and his co-defendant, Randall Taufete'e, used hand tools (e.g., a pry bar), power tools (e.g., an electric saw), and fire (via an oxyacetylene torch system)[1] on the ATM, the deposit box, the teller window, and the exterior door. Mr. Collado had a scanner/radio that was programmed to scan the local police dispatch channels. On at least two occasions during that five-and-a-quarter-hour

---

[1] The ATF's Fire Research Laboratory has opined that oxyacetylene torch systems produce fire in the form of a flame during operation.

United States' Sentencing Memorandum - 2
*United States v. Collado*, CR23-5000-01 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 period, Mr. Collado and Mr. Taufete'e left the area in the Subaru and returned with
2 additional tools.

3 Shortly after 5:00AM, the ATM started smoking heavily. Mr. Collado and Mr.
4 Taufete'e walked around the corner briefly, then ran in the direction of their Subaru. The
5 surveillance then showed another vehicle – an apparent customer – approaching the
6 ATM. This customer called 911 to report the fire. The total cost for the damage to O Bee
7 Credit Union was $198,018.85.

8 **B.    Procedural History**

9 After the fire and attempted burglary at O Bee Credit Union on October 24,
10 investigators began working to identify the two suspects shown in the surveillance video.
11 Three days later, TPD officers were dispatched to a possible weapons violation at an
12 apartment building in Tumwater. When they arrived, Mr. Taufete'e emerged from the
13 passenger seat of a Subaru station wagon. Eventually, TPD officers arrested Mr.
14 Taufete'e on a weapons violation. Aware of the credit union bureau fire, officers
15 photographed the Subaru. They also determined that Mr. Collado was driving the Subaru
16 Mr. Taufete'e got out of.

17 Mr. Taufete'e was booked on his weapons violation and quickly pled guilty. He
18 was sentenced to serve 27.75 months in state prison.[2]

19 Law enforcement impounded and searched the Subaru and found numerous hand
20 tools, gas tanks for the oxyacetylene torch system, clothing that had been worn during the
21 burglary, and Mr. Collado's Social Security card. A grand jury indicted Mr. Collado and
22 Mr. Taufete'e on January 4, 2023, on charges of Arson, Attempted Burglary of a
23 Federally Insured Credit Union, and Use of Fire to Commit a Felony. Dkt. 3. Agents
24 arrested Mr. Collado on January 11, 2023; he has been in custody at the Federal

25

26

27 [2] Mr. Taufete'e would ultimately appear in federal court for these proceedings through a writ issued to the
Department of Corrections. Dkts. 21, 37. Trial is set to begin in late January 2024.

United States' Sentencing Memorandum - 3
*United States v. Collado*, CR23-5000-01 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Detention Center since. Dkts. 10, 19, 45, 55. He pled guilty to Attempted Burglary of a Federally Insured Credit Union on June 7, 2023.

## II.     SENTENCING GUIDELINES CALCULATIONS

### A.     Offense Level

The parties have agreed the base offense level for Attempted Burglary of a Federal Credit Union is 12, pursuant to USSG § 2B2.1(a)(2). Presentence Report (PSR) ¶ 16. The parties also agree that there is a three-level enhancement for the loss amount, pursuant to USSG § 2B2.1(b)(2)(D). PSR ¶ 18.

However, the parties dispute whether a two-level enhancement applies for "more than minimal planning," pursuant to USSG § 2B2.1(b)(1). As the Probation Office notes in the PSR, the Guideline commentary defines "more than minimal planning" as "more than is typical for commission of the offense in a simple form" and "also exists if significant attempts were taken to conceal the offense." PSR Addendum; USSG § 2B2.1, comment. (n.4). "More than minimal planning" is also present "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." *Id*.

Here, Mr. Collado and his co-defendant used multiple, different tools as they attempted to break into the ATM, night deposit box, and credit union building. Surveillance footage shows them using at least three different tools: pry bars, saws, and fire via an oxyacetylene torch system. They wore gaiters/bandanas to conceal their faces and purple nitrile gloves to avoid leaving fingerprints. They had a scanner programmed to police channels. They left and returned at least twice. They tried to break into the ATM through its front, attempted to enter the bank through a back door, and tried to break into the night deposit box. Although any one of these facts considered in isolation may not be "more than minimal planning," when *considered in their totality* they are "more than typical," constitute "significant attempts to conceal the offense," and took place over a

United States' Sentencing Memorandum - 4
*United States v. Collado*, CR23-5000-01 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

long period of time, i.e., between midnight and 5:00AM. None of the individual acts was purely opportune.

Despite leaving to get different tools and then using them, Mr. Collado and Mr. Taufete'e were ultimately unsuccessful in breaking into the ATM and credit union building. Their face coverings occasionally slipped down, and their nitrile gloves split. They had to abandon their efforts when a customer pulled into the parking lot. However, their poor planning and ultimate failure to breach the ATM, night deposit box, or credit union building itself is not the inquiry before the Court. The inquiry is whether all their efforts, *combined*, constituted more than minimal planning: they did. On the facts of this case, the Court should apply the two-level enhancement and find an adjusted offense level of 17 as calculated by the Probation Office. PSR ¶ 17. With three levels off for acceptance of responsibility, the Court should find a total offense level of 14.

## B.   Criminal History Category and Guidelines Range

Mr. Collado has an extensive criminal history as an adult. PSR ¶¶ 30-49. Much of it is too old to score. The offenses that do score include a 15-month sentence for violation of a post-conviction no contact order (¶ 41), malicious mischief (¶ 42), a 19.5-month sentence for theft of a motor vehicle and burglary (¶ 43), false statement (¶ 44), drug paraphernalia (¶ 45), and theft of a motor vehicle (¶ 46). All told, Mr. Collado scores 12 points and is in category V. With a total offense level of 14 and a criminal history category V, the advisory guidelines range is 33 to 41 months.

## III.   FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence Mr. Collado at the low end of the advisory range, i.e., 33 months of confinement, followed by a three-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant."

United States' Sentencing Memorandum - 5
*United States v. Collado*, CR23-5000-01 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). It is also sufficient, but not greater than necessary, to achieve these goals. A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence.

**A.     Nature and Circumstances, and Seriousness of the Offense**

Mr. Collado's offense caused nearly $200,000 in damage to the O Bee Credit Union. Although no one was injured and even though the heist was ultimately unsuccessful, this was a serious crime. It also represents a notable escalation in Mr. Collado's criminal conduct. Although Mr. Collado has stolen before – merchandise from Sears (PSR ¶ 37), a truck from a church parking lot (¶ 43), a purple Honda (¶ 46) – none of those thefts had any element of destruction to them. Even the theft of the truck from a church parking lot involved Mr. Collado crawling under a fence, not damaging it by cutting through it. In contrast, the fire Mr. Collado and his co-defendant caused at the ATM could have spread to the entire building. The ATM and teller window had to be replaced. There was smoke damage to the interior of the credit union, which had to close for a short time.

**B.     History and Characteristics of the Defendant**

The United States acknowledges Mr. Collado's troubled childhood and drug addiction. But, after six months of court-ordered intensive outpatient treatment some ten years ago, he returned to substance abuse. Each time Mr. Collado got out of jail or prison, he returned to criminality in short order. He has been on supervision with the Department of Corrections off and on over the past five years but did not take advantage of any resources or opportunities offered. Instead, he was arrested for violations of his community custody in 2018, 2019, 2020, and 2022.

**C.     Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence**

Mr. Collado has served five significant, escalating sentences in state custody: a 12-month sentence in 2011 (PSR ¶ 40), a 15-month sentence in 2012-2013 (PSR ¶ 41), a

United States' Sentencing Memorandum - 6
*United States v. Collado*, CR23-5000-01 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

19.5-month sentence in 2014-2015 (PSR ¶ 43), an 18-month sentence in 2015 (¶ 45), and a 22-month sentence in 2017-2018 (PSR ¶ 46). Mr. Collado's persistent reoffending shows that he has little respect for the law. None of those sentences deterred Mr. Collado from committing additional crimes. A sentence of imprisonment significantly above these prior sentences, like the 33 months recommended here, reflects just punishment for this offense and – hopefully – provides the respect and deterrence previous state prison terms did not.

**D.      Need to Protect the Public from Further Crimes, the Kinds of Sentences Available, and Any Necessary Educational or Vocational Training or Other Special Care**

A 33-month term of imprisonment protects the public from further crimes. The United States does not know of any necessary educational or vocational training, but to the extent Mr. Collado can participate in Bureau of Prisons programming that furthers his education or vocational skills, he should do so. It also appears he would benefit from mental health therapy and substance abuse treatment.

**E.      Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

As the Probation Office noted, not many defendants are similarly situated to Mr. Collado. *See* PSR at p. 20. His co-defendant has a more significant criminal history and is proceeding to trial on offenses that carry mandatory minimum terms of imprisonment, so even that will not provide much in the way of a comparison.

## IV.      RESTITUTION

Restitution is mandatory under Title 18, United States Code, Section 3663A. Part of Mr. Collado's plea included his acknowledgement of the restitution and agreement to cooperate in paying it. Dkt. 59 at p.8. The amount of loss to O Bee Credit Union is $198,018.85; because the loss amount was covered by O Bee's insurance carrier, CO/Action, restitution is due to the insurance carrier.

United States' Sentencing Memorandum - 7
*United States v. Collado*, CR23-5000-01 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1       The government believes the judgment should read as follows: "Defendant's

2   liability for the full amount of restitution shall be joint and several with co-defendant

3   Randall Taufete'e, to the extent Randall Taufete'e is ordered to pay restitution in Case

4   No. CR23-5000-02BHS." If it becomes necessary to revisit this language after Mr.

5   Taufete'e's trial, the government file the necessary motion with the Court.

6   **V.    CONCLUSION**

7       For all of the reasons set forth above, the government respectfully recommends 33

8   months of imprisonment followed by a three-year term of supervised release, an order for

9   restitution (joint and several) in the amount of $198,018.85, and payment of the

10  mandatory fee of $100.00.

    DATED this 29th day of August, 2023.

13  Respectfully submitted,

15  TESSA M. GORMAN
    Acting United States Attorney

17   *s/Marci L. Ellsworth*
    MARCI L. ELLSWORTH
18  Assistant United States Attorney
    United States Attorney's Office
19  1201 Pacific Avenue, Suite 700
    Tacoma, Washington 98402
20  Phone: 253-428-3819
    Fax: 253-428-3826
21  Email: Marci.Ellsworth@usdoj.gov

United States' Sentencing Memorandum - 8
*United States v. Collado*, CR23-5000-01 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800